**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**JEAN MAYER**                                                                                                          **PLAINTIFF**

**VS.**                                                     **CIVIL ACTION NO. 2:07CV46-SA-SAA**

**FUTURE ELECTRONICS GP CORP., AND**
**FUTURE ELECTRONICS DISTRIBUTION CENTER, LP**       **DEFENDANTS**

**<u>MEMORANDUM OPINION</u>**

This cause comes on for consideration on Defendants' Motion for Summary Judgment [61]. The Court finds the following:

Plaintiff Jean Mayer brings this cause of action alleging that 1) defendants discriminated against her in violation of the Americans with Disabilities Act ("ADA") and 2) defendants unlawfully retaliated against her in violation of the ADA. Specifically, the plaintiff avers that the defendants subjected her to unlawful harassment in the workplace, delayed her reasonable accommodations, and eventually terminated her, all in violation of the ADA.

Plaintiff Mayer, a breast cancer survivor, worked for Future Electronics ("Future") from July 1, 1991, until her termination on March 30, 2006. Mayer began her employment with Future in Bolton, Massachusetts, and transferred to Southaven, Mississippi, in July 2004. Mayer was diagnosed with breast cancer in 2003.

According to the Plaintiff, when she returned to work in Bolton while recovering from breast cancer, she was only allowed to work part-time for a period. Mayer's physician initially gave her a five pound lifting restriction on her right arm, where she had lymph nodes removed. On April 12, 2004, her physician gave her a permanent lifting restriction of fifteen pounds. Later in 2004, her oncologist gave her a permanent ten pound lifting restriction. In 2005, her

therapist/physician sent notes and documentation that Mayer should avoid lifting over two to three pounds.

The plaintiff contends that prior to her transfer to Southaven, no one explained to her the nature of any differences in the jobs and how her physical condition (post breast cancer) might affect her new job. She further avers that she was of the opinion she would eventually be moved to the training sector.

Defendants contend that Bernard Betts, Vice President of Distributions, did not know of her lifting restriction, while the plaintiff argues that correspondence was sent to Future referencing the restriction. Defendants allege that Mayer never applied for a training position (a non-lifting position), and while the plaintiff concurs with this assertion, she states she was never informed of any openings in Southaven for training positions.

Once the facility was in full operating mode, Mayer was in the position of QCII (quality control) inspecting parts, which required the lifting of packages. According to the plaintiff, she informed her supervisor Michael Owens of her lifting restrictions and the difficulty she was having at that position. Plaintiff alleges she was given three choices: picking, quality control, or repack – which she contends all have a fifty pound minimum lifting requirement. Claiming she had no choice, she transferred to repack.

At repack, Plaintiff began having difficulty lifting certain parts, and therefore, she discussed her restrictions with her supervisor Justin Garrison. Although Defendants insist that Garrison agreed to assist her with packages too heavy for her to lift, the plaintiff avows Garrison was not always present to assist her with the lifting.

Resultantly, Plaintiff then requested an accommodation of a transfer to a different position. According to the Plaintiff, Betts told her "to be careful and stop complaining."

Plaintiff was moved to a data entry position where no lifting was required. Plaintiff stayed at this position for approximately six weeks and sought another accommodation because this position required her to input data into a computer that was positioned at or above shoulder level. Thus, the plaintiff asserts that the keyboard, mouse, and monitor were all positioned in a way which required her arms to be in an awkward position. She advised her supervisor, Julian Parker, about the problems and asked for a more appropriate place to enter data. Parker notified her that this was a temporary set up, and she would be able to move to an office computer. However, the Plaintiff states she was never able to use the computer. Also, the plaintiff notes that David Barnett, her supervisor, stated that "the doctor didn't say anything about something being wrong with [your] legs."

Plaintiff informed Betts that the data entry position was not "working out," and Betts told her to apply for a customer service position. Thus, Mayer was transferred to the customer service department on August 15, 2005, and remained there until her termination on March 30, 2006.

Defendants maintain that the plaintiff was terminated due to "disruptive behavior." Plaintiff disputes this arguing that she had never been written up for any kind of disruptive behavior. Furthermore, the Plaintiff asserts that neither Nancy Gschwendtner, the customer service supervisor, nor Kim Durham, the human resources manager for Southaven, could give a specific example of Mayer's disruptive behavior. Plaintiff persists that she was never formally counseled about any potential problems with her work or relationship with others. However, the plaintiff does admit she was notified of Gschwendtner and Durham's concerns in a March 3, 2006, annual review meeting. Plaintiff avows that she was a "good employee" and had just received a gold star nomination for her work performance. Thus, Mayer filed a charge of

3

discrimination with the Employment Opportunity Commission (EEOC) and brought this suit on March 26, 2007, within ninety days of receipt of her Notice of Right to Sue letter from the EEOC.

*STANDARD FOR MOTION FOR SUMMARY JUDGMENT*

To be entitled to summary judgment, a party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Rule 56(c) compels the court to grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. 2548. Before finding that no genuine issue for trial exists, the Court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

Conclusional allegations, speculation, improbable inferences, and unsubstantiated assertions do not substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." TIG Ins. Co., 276 F.3d at 759.

*DISCUSSION AND ANALYSIS*

*ADA Discrimination*

4

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 476 (5th Cir. 2006) (quoting 42 U.S.C. § 12112(a)). A disability within the meaning of the ADA is "a physical or mental impairment that substantially limits one or more of the major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2). Both parties concede that Mayer has a "disability" under the ADA due to her history of breast cancer.

"Discrimination" under the statute includes:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodations would impose an undue hardship on the operation of the business entity.

42 U.S.C. § 12112 (b)(5)(A). A "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification or equipment or devices . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

The defendants assert that they are entitled to summary judgment on Plaintiff's argument that it failed to provide Plaintiff with a reasonable accommodation. Specifically, Defendants persist that Plaintiff failed to exhaust her administrative remedies because Mayer claims that Defendants failed to provide a reasonable accommodation did not occur within 180 days of filing the EEOC complaint. The plaintiff concedes that she failed to exhaust her administrative remedies for Defendant's failure to provide a reasonable accommodation. Thus, the defendants'

summary judgment as to failure to provide a reasonable accommodation and hostile work environment[1] is GRANTED.

*Prima Facie Case of Discrimination*

Plaintiff may either prove discrimination by direct or circumstantial evidence. Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1217 (5th Cir. 1995). Direct evidence of discrimination is that which proves discriminatory animus without an inference or presumption. Brown v. E. Miss. Elec. Power Ass'n, 989 F.2d 858, 861, *reh'g denied*, 995 F.2d 225 (5th Cir. 1993). In order for comments to amount to direct evidence of discrimination, the comments must be 1) related to the protected class of which the plaintiff is a member; 2) proximate in time to the employment action; 3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 222 (5th Cir. 2001). Also, if comments require an additional inference, then they are circumstantial evidence, not direct evidence. Haas v. ADVO Sys., Inc., 168 F.3d 732, 733 (5th Cir. 1999). The supervisor's comments of "be careful and stop complaining" and "the doctor didn't say anything about something being wrong with [your] legs" require additional inferences; thus, the comments are circumstantial evidence.

In the absence of direct evidence, the plaintiff must establish a prima facie case of discrimination. Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005). Specifically, she must demonstrate that (1) she suffers from a disability; (2) she is qualified for the job; (3) she was subjected to an adverse employment action; and (4) she was replaced by a non-disabled

---

[1] Plaintiff failed to respond to Defendants' motion to summary judgment as to hostile work environment. It is unclear from the complaint whether the plaintiff intended to bring a hostile environment claim, and without a response, the Court finds that the unopposed motion for summary judgment on the hostile work environment claim is GRANTED.

employee or treated less favorably than a non-disabled employee. See Seaman v. CSPH, Inc., 179 F.3d 297, 300 (5th Cir. 1999).

Defendants concede that Plaintiff (1) suffers from a disability, (2) was qualified for the job, and (3) was subject to an adverse employment action. However, the defendants dispute that she was replaced by a non-disabled person or treated less favorably than non-disabled employees. Thus, Defendants aver that Plaintiff cannot establish a prima facie case of discrimination. Conversely, the plaintiff contends that non-disabled employees were treated better than Mayer. For example, the plaintiff argues, Debbie Baptist received written warnings and counseling about problems with interpersonal relationships with co-workers before her termination.

As to the only disputed element, the Court finds that the plaintiff has proved that she was treated less favorably than other non-disabled employees, e.g., Debbie Baptist. Gschwendtner stated that Baptist was "written up a few times" before she was terminated. Mayer only received a low score and comments on her annual written evaluation. Moreover, Bernard Betts stated,

> Do I know for a fact that she was counseled about that? I tell you what's going on in my mind, and maybe that will help. If we were getting to the point that we were realizing we were going to have to let her go, she - - Kim would have put pressure on us to do some counseling, because we can't let somebody go without going through that process usually.

The record reveals that Mayer did not receive a written warning nor was she formally counseled. In sum, the plaintiff has proved that she was treated differently than other non-disabled employees and, thus, has established a prima facie case of discrimination.

*Legitimate, Non-discriminatory Reason*

If the plaintiff establishes a prima facie case of discrimination, the defendant then has the opportunity to rebut the presumption of discrimination by proffering a legitimate,

7

nondiscriminatory reason for the adverse employment action. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). An employer can meet that burden by bringing forth admissible evidence of an explanation that would be legally sufficient to justify a judgment for the employer. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); Rachid v. Jack In The Box, 376 F.3d 305, 312 (5th Cir. 2004); Bodenheimer v. PPG Indus. Inc., 5 F.3d 955, 957 (5th Cir. 1993). The burden on the defendant is minimal and is not subject to a credibility determination. Hicks, 509 U.S. at 507, 509, 113 S. Ct. 2742; Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996).

Defendants claim their reason for terminating Mayer was due to disruptive behavior. Defendants maintain that Plaintiff did not follow directives, complained about the way Gschwendtner supervised the department, and did not get along with fellow co-workers. Thus, Defendants contend she was terminated because she was disruptive and harmful to company morale.

The Court finds that the defendants have met this low burden of producing a legitimate non-discriminatory reason since they proffered evidence that would be legally sufficient to justify a judgment for the employer, i.e., that she was terminated for "disruptive behavior."

*Pretext*

If the defendant meets that burden, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination; or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 412 (5th Cir. 2007); Rachid, 376 F.3d at 312. In determining whether the case is one of intentional

8

discrimination, "a court should consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case.'" Crawford v. Formosa Plastics Corp., La., 234 F.3d 899, 902 (5th Cir. 2000) (quoting Reeves, 53 U.S. at 148-49, 120 S. Ct. 2097). Further, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves, 530 U.S. at 143, 120 S. Ct. 2097. Therefore, the Plaintiff must affirmatively make at least a minimal showing of discrimination to create a genuine issue of material fact in order to survive summary judgment. See Berquist v. Washington Mut. Bank, 500 F.3d 344, 356-57 (5th Cir. 2007); see Keelan v. Majesco Software, Inc., 407 F.3d 332, 345-46 (5th Cir. 2005).

The plaintiff persists that "disruptive behavior" is very subjective in nature, and she was never warned of the consequences of this behavior. Plaintiff points out the two above comments in order to prove the defendant's reason is a pretext. Particularly, the plaintiff states that Betts told her that "she should be careful and to basically stop complaining" and that Barnett told her that "the doctor didn't say anything about something being wrong with [your] legs." Lastly, the plaintiff avers that within thirty days prior to termination, Betts had conference calls with the director, Dwight Burton, and others within human resources, including Mitch Wineberg, Vice President of Human Resources, "discussing past accommodations given to Mayer by Future and how they treated Mayer better than they should have."

Furthermore, Plaintiff declares that neither Durham nor Gschwendtner could give any examples of any disruptive behavior. Plaintiff points out that it was not until her written performance appraisal on March 3, 2006, (twenty-seven days before her termination), that she was apprised of any directive that she personally needed to get along with her co-workers and

control her frustration. Plaintiff maintains that both Durham and Gschwendtner both asserted that this was not a disciplinary action but merely a "needed to work on" portion of the review. Mayer alleges that neither Durham nor Gschwendtner spoke directly to Mayer during the review. Instead, Mayer proclaims that the review consisted of her reading the filled-out written review. In sum, Plaintiff maintains that she was good employee with over fourteen years with the company. Plaintiff also notes that she even received a gold star for good service in 2006.

The Court finds that Plaintiff has created a dispute as to a genuine issue of material fact that defendants' reason for her termination was a pretext for discrimination. Taking the facts in a light most favorable to the plaintiff, Defendants' supervisors made comments, which although do not amount to direct evidence, can be used as circumstantial evidence of discrimination First, one of Plaintiff's supervisors, Betts told her to "be careful and stop complaining" after she requested an accommodation. The comment was made when she was asking for an accommodation, a mere eight and a half months before her termination. This comment was made proximate in time to the alleged discrimination at issue and relates to the employment decision, her termination. If the jury believed the plaintiff, they could infer discrimination from this comment.

Also, when Plaintiff complained about the shoulder-level keyboard and having to stand to type, her supervisor, Barnett told her that "the doctor didn't say anything about something being wrong with [your] legs." This comment was made when Mayer was asking for an accommodation, a mere seven and a half months prior to her termination. The comment was made proximate in time to the alleged discrimination at issue and relates to the employment decision. Again, if the jury believed the plaintiff's version of the facts, they could infer discrimination. See Luckett v. Home Depot, U.S.A., Inc., 2007 WL 4292577 *5 (S.D. Miss. Dec. 5, 2007) (race-related comments made proximate in time to adverse employment action

were sufficient evidence for a jury to conclude that race was a motivating factor in his termination).

Additionally, since the defendants terminated Plaintiff without formal written warnings or write-ups, a jury could infer that Defendant's reason was a pretext for discrimination. Plaintiff's only negative marks were on one yearly performance review form.

Lastly, a jury could also infer from Bernard Betts' testimony that Defendants' reason was a pretext for discrimination. Betts testified that he and other supervisors had one or more "conference calls" where they discussed Plaintiff. Specifically, Betts states

> [s]o now I'm realizing customer service is not making her happy. And there's a feeling of Dwight saying, "Bernard, you've done everything here, you know." And he's giving me a few I-told-you-so's. And I'm saying, "Okay, Go to HR corporate and let them deal with this now," because I really felt we had done everything. It seemed to me impossible that a customer service job would have limitations to it, because we don't have – what do you call a job when somebody comes back – a light duty job. We don't have light duty jobs. You know, everybody has to lift something. The closest we would have had would have been customer service. And now, I'm having Dwight telling me she's saying that the files are too heavy. But I remember being surprised that that really could be that bad, you know, the files are so heavy she can't be in customer service.
> 
> . . .
> 
> It's probably the first time that I hear that she's unhappy in customer service.
> 
> . . .
> 
> They're saying she's unhappy because the files are too heavy.
> 
> . . .
> 
> And we had a few conversations about it between us, Kim is talking to Isaac Amala, who is the director of HR in Montreal. And at the time, Mitch Wineberg is brought into the picture. . . Mitch said on the conference call, "You've accommodated her many more times than you would have accommodated the typical employee. She's transferred more often within her staunch there." I don't know how long she was with us in Memphis, but remember, you weren't suppose to change more than once every six month[s], and she had. And it seems that you've done everything possible to accommodate this, and you don't have light duty, per say [sic], so we can't give her a light duty job. The closest we have is customer service, and she was unable to do that. And based on the fact that she

11

was doing so much disruption and that it's affecting the morale of the team, we thought we had done everything possible and we should let her go.

. . .

Based on the above testimony, a jury could infer that she was terminated because of her disability and not for the reason given by the defendants. Notably, the plaintiff has at least created a genuine issue of material fact that her disability could have been one of the reasons for her termination. Burrell, 482 F.3d at 412. (noting that the plaintiff need only show that discrimination was one of the reasons he/she was terminated). In viewing "'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case,'" the Court finds that plaintiff has created a genuine issue of material fact that she was discriminated against. Crawford, 234 F.3d 899, 902 (quoting Reeves, 53 U.S. 148-49, 120 S. Ct. 2097).

*ADA Retaliation*

In order to establish a prima facie case of retaliation, the plaintiff must establish that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the first two elements. Jenkins v. Cleco Power, LLC, 487 F.3d 309, 316-17 (5th Cir. 2007).

Defendants assert that assuming requesting an accommodation constitutes a protected activity, there is no causal link between the protected activity and Mayer's termination for disruptive behavior. Defendants declare that the last time she requested an accommodation was at least 227 days before she was terminated. Moreover, Defendants state that the alleged comments occurred nine months prior to her termination.

Plaintiff affirms that a causal connection between the protected activity and her termination exists due to the Defendants' animus toward Mayer. Plaintiff further insists that

12

Betts admitted that Burton did not want to accommodate Mayer, but rather wanted to require her to work an entire six months before she could transfer.

Based on the comments, and testimony the Court analyzed in the *Pretext* section supra, the Court holds similarly that Plaintiff has created a genuine issue of material fact that the defendants retaliated against her for engaging in a protected activity.

*CONCLUSION*

The Court finds that the Defendants' motion for summary judgment is **GRANTED** as to the failure to provide accommodations and hostile work environment claim but **DENIED** as to all other claims. In sum, the plaintiff has created a genuine issue of material fact that the Defendants' discriminated against her because of her disability and retaliated against her while she was engaged in a protected activity or requesting an accommodation.

A separate order shall issue on this day.

So **ORDERED**, this the 15th day of October, 2008.

/s/ Sharion Aycock\
**U.S. DISTRICT COURT JUDGE**